UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIE WINFIELD and ROBERT WINFIELD,<br>*pro se* Plaintiffs,<br><br>v.<br><br>TOWN OF ANDOVER, CHRISTOPHER HUGHES,<br>SOBAHN NAMVAR, STEVEN GERROIR, BARRY<br>DUBOIS, DERREK DERANIAN, PATRICK KEEFE,<br>ANDREW LOONIE, THOMAS KENNEDY III,<br>MICHAEL MANSFIELD and RICHDALE<br>CONVENIENCE STORE,<br>Defendants. | C.A. No. 1:17-cv-11051 |

**MEMORANDUM OF LAW IN SUPPORT OF THE
TOWN OF ANDOVER, CHRISTOPHER HUGHES, SOBAHN NAMVAR,
STEVEN GERROIR, BARRY DUBOIS, DERREK DERANIAN, PATRICK KEEFE,
ANDREW LOONIE, THOMAS KENNEDY III AND MICHAEL MANSFIELD'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)**

**INTRODUCTION**

This action stems from two separate incidents involving Marie Winfield and her husband, Robert Winfield, and their interactions with a number of different first responders employed by the Town of Andover, including Community Support Coordinator Sobahn Namvar, Police Sergeant Steven Gerroir, Police Officer Christopher Hughes, Police Officer Barry Dubois, Police Officer Derrek Deranian, Police Chief Patrick Keefe, Andover Fire & Rescue members Andrew Loonie and Thomas Kennedy III, and Fire Chief, Michael Mansfield (collectively "the Town Officials"). The *pro se* plaintiffs allege Town employees made false claims and improperly applied for Marie Winfield's civil commitment pursuant to M.G.L. c. 123, §12, and have violated her First, Fourth, and Fourteenth Amendment rights, and engaged in various torts and violations of criminal law by discriminating against the plaintiffs on account of their race.

Plaintiffs' Complaint contains thirteen counts, as follows:

| Count | Theory | Defendant(s) |
|---|---|---|
| 1. | 42 U.S.C. § 1983 (Violation of the First Amendment) | All Defendants |
| 2. | 18 USC §§ 1001 and 1515 (False Statements) | Police Officer Deranian |
| 3. | 42 U.S.C. §2000a (Public Accommodation) | Richdale Convenience Store |
| 4. | 42 U.S.C. §2000a (Public Accommodation) | Andover Defendants |
| 5. | 42 U.S.C. § 1983 (False Imprisonment) (Marie Winfield) | Individual Andover Defendants |
| 6. | Violation of M.G.L. ch. 12 §§ 11H and 11I (MCRA) (False Arrest) (Marie Winfield) | Individual Andover Defendants |
| 7. | 42 U.S.C. § 1983 (False Imprisonment) (Robert Winfield) | Andover Police Officers |
| 8. | 42 U.S.C. § 1985 and MCRA (False Arrest) (Robert Winfield) | Andover Police Officers |
| 9. | 42 U.S.C. § 1985(3) (Conspiracy to Violate Civil Rights) | Individual Andover  Defendants |
| 10. + 11 | 42 U.S.C. § 1983 (Defamation of Character) | All Defendants |
| 12. | 42 U.S.C. § 1983 (Supervisory Liability) | Andover Police Chief Patrick Keefe and Andover Fire Chief Michael Mansfield |
| 13. | 42 U.S.C. § 1983 (*Monell* claim) | Town of Andover |

As explained below, pursuant to Fed. R. Civ. P. Rule 12(b)(1)&(6), the Town of Andover and the several Town Officials (sometimes, collectively, "the Town Officials") now move for dismissal of Plaintiffs' Complaint in its entirety.

## **FACTUAL ALLEGATIONS**[1]

Although difficult to discern, Plaintiffs' Complaint stems from separate incidents involving Marie Winfield (Ms. Winfield") and Robert Winfield ("Robert Winfield").   By way of background, in 2014, Ms. Winfield filed a lawsuit against the Town of Andover, Andover Police

---

[1] The Defendants take the facts alleged in the Complaint as true for purposes of this Motion to Dismiss *only* and otherwise contest the veracity of the allegations and expressly reserve their right to do so.  *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  For purposes of brevity, except when discussing the events which concern Robert Winfield, any reference to the "plaintiff" shall mean Marie Winfield ("*Winfield I*").

Department, Lieutenant Edward Guy and Lieutenant John Pathiakis.[2]   At times, the Winfields refer to the events which spawned the prior lawsuit (Winfield I) in this action.  However, given that Winfield I was resolved via a Settlement Agreement and Release, any claims by the Winfields in this Action (Winfield II) arising out of those earlier events, are barred.  Indeed, the Winfields seem to acknowledge as much as Paragraphs 27-128 are titled, "Facts Of This Case."  *See also* Complaint, ¶¶ 97 & 101 (where the plaintiffs describe the April, 2017 events at the Richdale Convenient Store as "the incident that gave rise to this Action.").  Accordingly, the Town Officials will focus on the more recent events involving Ms. Winfield and her husband, Robert Winfield.[3]

Ms. Winfield alleges that while her civil rights action against two Andover Police Lieutenants (Winfield I) was pending, she called the Andover Police Department on August 2, 2016, "to ask for assistance with a guest in her house they Plaintiff [sic] wanted to leave." Complaint, ¶ 27.  The guest "was being hostile, and had anger management issues."  *Id.*  Ms. Winfield alleges this unnamed man later summoned the plaintiffs to court, and told an unnamed Clerk that "Andover Police had told him to take the Plaintiffs to court, and that Plaintiff Marie Winfield was 'unstable.'"  *Id.*  Ms. Winfield subsequently received a 30-Day Notice to Terminate Tenancy from her landlord, dated August 5, 2016.  Ms. Winfield alleges the "Andover police had had prior communications with Plaintiffs' landlord when the Plaintiffs called Andover Fire and

---

[2] *Marie Winfield v. Town of Andover, Lt. Edward J. Guy, III, and Lieutenant John N. Pathiakis*, C.A. No. 1:14-CV-14362.

[3] Ms. Winfield takes issue with the manner in which the Andover Police Department has responded to calls from private businesses in Andover, *e.g.,* Santander Bank, CVS, and Stop & Shop, involving Ms. Winfield and other store patrons.  Complaint, ¶¶ 19 & 52.  However, the Complaint does not state when these calls occurred or how the Andover Police violated Ms. Winfield's constitutional rights merely by responding to these calls or enforcing the No Trespass Order issued by CVS.  Suffice to say, if Ms. Winfield believes that these establishments treated her unfairly on account of her race, then Ms. Winfield's complaint lies against them, not the Andover Police Department.

Rescue because the house was filling up with water coming from the outside." *Id.*, ¶28.  Plaintiffs allege their landlord informed them they were evicted because they "have someone living in the house." *Id.*, ¶ 28.  While the causal connection is unclear, at best, plaintiff alleges that unnamed Andover Police officers engaged in "coercions and retaliatory involvement" and somehow "violat[ed] Massachusetts housing laws" with respect to the Winfields' possible eviction. *Id.*, ¶¶ 28 & 29.

Six months later, on January 7, 2017, Robert Winfield was driving behind a tow truck on Essex Street in Andover. *Id.*, ¶ 29.  The Tow truck was pulling a vehicle up an incline when the vehicle came loose and rolled backward. *Id.*  As it did so, plaintiffs allege the tow truck operator jumped out of the truck and left it unattended. *Id.*  The tow rolled backward and struck Mr. Winfield's vehicle, totaling it. *Id.*, ¶ 30.  Plaintiffs allege responding police officer Derrek Deranian wrote a "false, deceptive, and misleading report aimed solely at protecting the interest of the truck owner," who had allegedly told Mr. Winfield that he was friends with the Andover Police. *Id.*, ¶¶ 30-31.  Among other issues (including Officer Deranian's approximation of estimated damages), plaintiffs dispute the fact that Officer Deranian classified the incident as a two-car accident (rather than three, given the vehicle that came loose from the tow truck) and contend that Officer Deranian "had to have made up the fact that somehow it was the Plaintiff who drove into the back of the truck, and not the other way around . . .." *Id.*, ¶ 32.  Plaintiffs contend that as a result of Officer Deranian's alleged misconduct, "plaintiff was coerced into accepting a vehicle from the owner of Elm Street Automotive Center who did not want the accident to go through his insurance." *Id.*, ¶ 33.  Mr. Winfield alleges he "felt compelled to go with the offer" made by Elm Street Automotive because of the insurance ramifications that would have resulted if he had been

placed at fault for the accident. *Id.* The Winfields allege there were a number of problems with the title of the replacement vehicle they were given and that it was a lemon. *Id.*

Continuing, Ms. Winfield alleges that on April 13, 2017, she was improperly involuntarily committed for a psychological evaluation pursuant to M.G.L. c. 123, §12 after an encounter with several Andover Police Officers and the Andover Community Support Coordinator (a licensed social worker employed by the Town of Andover) at the Richdale Convenience Store. *Id.,* ¶ 40. Ms. Winfield alleges there had been an incident in the Richdale store involving her and the clerk, in which the clerk allowed a number of other patrons to complete their transactions before her. *Id.*, ¶¶ 37-39. A customer in line behind her then called the Andover Police. *Id.* Pursuant to the Andover Police Incident reports attached to plaintiffs' Complaint at Exhibits H & J, an individual at the Richdale Convenience Store called the Andover Police Department to report an "unruly customer." *See* Narrative of Patrolman Barry Dubois, Exhibit J, p. 3.[4] At the time the Police arrived, Ms. Winfield had a deep cut through her lower lip and into her mouth and was visibly bleeding. Complaint, ¶ 41.

Andover Police Officers, including Officer Barry Dubois, Officer Christopher Hughes, and Sergeant Steven Gerroir responded to the scene, as did Andover Fire and Rescue employees Andrew Loonie and Thomas Kennedy, III; "the men began telling the Plaintiff that they would like to take her to the hospital to get her lip checked." *Id.*, ¶ 40.[5] According to the Police Report

---

[4] Plaintiff's Complaint references an Exhibit I, though there is no such attachment.

[5] Officer Hughes recounted that he advised Ms. Winfield to go to the hospital, "but she stated she did not want to and she did not trust anyone and would sue if we did anything." Complaint, Ex. J, p. 3. Officer Hughes had tried to contact Ms. Winfield's daughter but could not reach her. His report states, "due to the fact that Winfield had no responsible party to be released to and also due to the fact that she was very lethargic [sic], delusional and appeared to be impaired, she was transported by Andover FD to the hospital under a Section 12." *Id.*

prepared by Patrolman Barry Dubois, Ms. Winfield stated that her husband had hit her. *Id.* at Ex. H. Ms. Winfield, however, claims this is a "lie," and maintains that she lost balance and had hit her lip on a table next to her bed that morning due to a medical condition. *Id.*, ¶ 34. As recounted in the Andover Fire Rescue Department's trip sheet, the first responders "were having a difficult time to convince [Ms. Winfield] to go to the hospital" to get medical treatment for her cut. *See* Exhibit G. The Town's Community Support Coordinator, Sohban Namvar, was therefore summoned to the scene to speak with Ms. Winfield. *Id.*, ¶40. Ms. Winfield alleges she told Mr. Namvar, she "would not mind letting you take me to the hospital if you promise me that you will not play any shenanigans by abusing Massachusetts General Law 123, Section 12, as you did twice before."[6] Ms. Winfield alleges the Police on the scene told her they would have to force her to come with them if she did not voluntarily go to the hospital. *Id.* As indicated in Officer Hughes' report, Mr. Namvar concluded that Ms. Winfield posed a danger to herself and needed to go the hospital. Complaint, Ex. J. Ms. Winfield alleges that at this point, she willingly got on a stretcher, though she did not want to. *Id.*, ¶40. Ms. Winfield was transported to Holy Family Hospital (Methuen), treated and released.

While this was unfolding, Officer Dubois was speaking with Robert Winfield outside the Richdale Convenience Store. Complaint, Ex. H, Narrative by Officer Barry Dubois. As indicated in Officer Dubois's report, Mr. Winfield had driven his wife to the Richdale Convenience Store

---

[6] M.G.L. c. 123, § 12 ("Section 12"), provides for the emergency restraint and hospitalization of persons posing a risk of serious harm to themselves or others by reason of mental illness. In emergency situations, the statute provides that a psychologist, police officer, or other certain individuals "who [believe] that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness may restrain such person and apply for the hospitalization of such person for a 3-day period at a public facility or a private facility." Police officers and other officials who do so are immune from civil suits arising out of such action with respect to state law claims. M.G.L. c. 123, § 22.

and he appeared to be intoxicated; he admitted to having drank vodka and stated he was taking seven different anxiety medications. *Id.* Officer Dubois administered several Standardized Field Sobriety Test. *Id.* Based on Ms. Winfield's statement to Officer Dubois that Mr. Winfield hit her and Mr. Winfield's apparent intoxication (and his statements that he had been drinking, was on medication, and he was having trouble moving his legs because his feet felt "heavy"), he was arrested for domestic assault and battery and operating his motor vehicle under the influence. *Id.*

## ARGUMENT

### I. Standard of Review.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* Fed. R. Civ. P. 8(a) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief" and "does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" *Bell Atlantic*, 550 U.S. at 556, n.3, *citing* 5 Wright & Miller, § 1202, at 94-95. The Rule 8(a) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *citing Bell Atlantic*, 550 U.S. at 555. A plaintiff's claim for relief must be plausible on its face. *Id.*, 550 U.S. at 570. A facially plausible claim is one that sets forth alleged factual content – as distinguished from legal conclusions – that, if true, would allow the court to draw the reasonable inference that the defendant is liable for misconduct. *Iqbal*, 129 S. Ct. at 1949. Determining plausibility "requires the reviewing court to draw on its judicial experience and common sense." *Id.* Moreover, the requirement that a court must accept as true all of the

allegations set forth in a plaintiff's complaint does not apply to legal conclusions. *Id.* "[A] sheer possibility that a defendant has acted unlawfully" is insufficient to withstand dismissal. *Id.* Because the plaintiffs have failed to state a claim upon which relief can be granted, their Complaint should be dismissed.

## II.        The Plaintiffs Have Failed To State a First Amendment Retaliation Claim.

The Winfields maintain that at the time of the "complained conduct," they had a right to engage in "protected speech and activities relating to the rights of citizens to be free from retaliation and objectionable conduct by the police . . .." Complaint, ¶ 64. The Town Officials do not disagree. *See, e.g., D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012) (describing two-stage approach to First Amendment retaliation claims). Still, like other rights secured by the Bill of Rights, Ms. Winfield's free speech rights are not absolute. Moreover, it does not appear that the Town Officials have done anything to preclude or foreclose Ms. Winfield from exercising her free speech rights.[7] Instead, Ms. Winfield maintains that the "[d]efendants retaliated against the Plaintiffs by taking action to coerce the Plaintiffs' landlord to seek eviction against the Plaintiffs as reprisal for Plaintiffs' civil rights lawsuit against the Defendants . . . as well as reporting a domestic incident to a police officer or law enforcement." Complaint, ¶ 63. The "civil rights lawsuit" to which Ms. Winfield refers was filed in Essex County Superior Court (and later removed to federal court), on November 3, 2014. The alleged "retaliatory" conduct of which Ms. Winfield complains, *i.e.*, the Notice To Terminate Tenancy is dated August 5, 2016. Complaint, Exh. D. Hence, the lack of any temporal connection between these two events strongly suggests a lack of any cause-and-effect between them. Moreover, the Complaint is utterly silent

---

[7] For example, like any other Town resident, Ms. Winfield can address Andover's Board of Selectmen and Town Manager during the Citizens' Forum portion of the Selectmen's meetings, which are held every other week.

with respect to what "coercive" conduct was leveled by the Andover Police Department against plaintiff's landlord, which presumably led to the issuance of the Notice To Terminate Tenancy. Instead, Ms. Winfield alleges that the day after she called Andover Fire & Rescue, because "the house was filling up with water," her landlord called to tell Ms. Winfield that she (the landlord) had been informed that Ms. Winfield had called the Fire Department about the water problem. Complaint, ¶ 28.  There is no allegation that anyone from the Andover Police Department took any action to compel Ms. Winfield's landlord to initiate what Ms. Winfield refers to as a "retaliatory eviction."  Apparently, this matter is still pending in Housing Court, which also warrants this Court from delving into these matters in this Action.  Based on the foregoing, the Town Officials submit that Count One should be dismissed.

### III.    Count II is a Criminal Statute Which Provides No Private Right of Action and Therefore Should Be Dismissed.

The Winfields maintain that Police Officer Derrek Deranian "misrepresented material facts in a motor vehicle insurance matter."  Complaint, ¶ 69.  Presumably, this allegation relates to the Police Report that Officer Deranian prepared in connection with Mr. Winfield's automobile accident on January 7, 2017.  Complaint, Exh. E.  The Town Officials need not belabor the point. Count Two is premised upon a violation of Title 18 U.S.C. § 1001, which is a criminal statute.[8] There is no private right of action under this statute and, accordingly, Count Two should be dismissed.  *See, e.g., Abou-Huessin v. Gates*, 657 F. Supp.2d 77, 80 n.1, aff'd., 2010 WL 2574084 (D.C. Cir.); *Fiorino v. Turner*, 476 F. Supp. 962, 963 (D. Mass. 1979); *see also, U.S. v. Almeny-*

---

[8] The heading of Count II also refers to 18 U.S.C. §1515.  Section 1515 merely provides the definitions for certain federal offenses involving obstruction of justice.  Accordingly, no further discussion is warranted.

*Rivera*, 781 F. 2d 229 (1st Cir. 1985) (Section 1001 applicable to criminal matters involving a "false statement" provided to the federal government).

## IV.     The Plaintiffs' Claim Under Title 42 U.S.C. § 2000a Should Be Dismissed For Failure To Exhaust Their Administrative Remedies.

At the outset, the Town of Andover and the Town Officials note that they will confine their argument to the Richdale Convenience Store incident and will not respond to the allegations in Paragraph 96, which were part of a Settlement Agreement and Release reached in *Winfield I*.  With this in mind, Ms. Winfield maintains that "the Defendants have also unfailingly aided and abetted private businesses in discriminating against [her] on the same bases," to wit, "race, color, gender, age, and national origin. Complaint, ¶ 94.  Assuming *arguendo* that the Richdale Convenience Store is a place of public accommodation, it is hard to determine what exactly the Town Officials did to interfere with Ms. Winfield's right to shop there.  To begin with, this incident was precipitated by a call to the Andover Police Department by another "customer" who was waiting in line at Richdale's.  Complaint, ¶ 39.  As Ms. Winfield was leaving, several Andover police and EMT arrived.  At some point, the Town's social worker, Sobahn Namvar, also arrived on the scene. Eventually, out of concern for Ms. Winfield's well-being, her inability to explain how she got the cut on her lip and given the severity of the cut on her lip, Mr. Namvar gave the approval for the Police Officers to take Ms. Winfield to Holy Family Hospital for treatment of her lip and to make sure she was emotionally stable.  Ms. Winfield acknowledges that the injury to her lip required stitches and a Tetanus shot.  Complaint, ¶¶ 39-53 & Exhibits G, H & J.  The discharge papers do contain the notation that "Marie is not a risk to self or others.  She refuses all services."  Complaint, Exhibit F.

The Andover Police Officers and Fire & Rescue involved in this incident did no more than respond to a call in which Ms. Winfield had a cut lip, which she claimed was caused by her husband

(which Ms. Winfield now disclaims).  Yet, again, the responding officers faced a difficult domestic situation where doing nothing could have resulted in disaster.  Moreover, they did not proceed under Section 12 until Ms. Winfield had been looked at and spoken to by the Community Service liaison, Sobahn Namvar, who is authorized under Section 12 to order such a psychiatric evaluation. Whatever Ms. Winfield's history with the Andover Police Department, she does not even allege that she has had any prior encounters with Mr. Namvar.   In any event, Count IV fails because the Winfields failed to provide written notice of their public accommodation claim as required by and under 42 U.S.C. 2000a-3(c).  *See Hollis v. Rosa Mexicano DC, LLC*, 582 F. Supp.2d 22, 24-25 (D.C.D.C. 2008); *cf. Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990) (Title VII). [9]

Count IV also refers to Title 42, Chapter 21 a/k/a 42 U.S.C. §1981.  Plaintiffs' nascent Section 1981 claim fails for three reasons.  First, Ms. Winfield failed to exhaust her administrative remedies.  *Taite v. Bridgewater State Hospital*, 2017 WL 1234101 *6 (D. Mass.).  Second, Ms. Winfield has not identified any contract with which the Town Officials interfered – let alone on account of her race.  *See Garrett v. Tandy Corp.*, 295 F.3d 94, 100-02 (1st Cir. 2002).  Third, when a Section 1981 claim is pressed against a state actor, Section 1983 provides the exclusive damages remedy for the violation of rights secured by Section 1981.  *Jones v. City of Boston*, 2012 WL 4530594 *3 (D. Mass.), rev'd on other grounds *Jones v. City of Boston*, 752 F.3d 38 (1st Cir. 2014); *see also, McCormick v, Miami Univ.*, 693 F.3d 654, 660-61 (6th Cir. 2012) (holding the Supreme Court's decision in *Jett v. Dallas Indep. School District* bars Section 1981 claims against state

---

[9] The heading of Court IV also refers to M.G.L. c. 272, §98, which is a criminal statute designed to prevent discrimination in places of public accommodation as defined in Section 92A.  *Jones v. City of Boston*, 738 F. Supp. 604, 606 (D. Mass. 1990).  Section 98 provides that anyone held liable thereunder shall also be liable for such damages as provided in M.G.L. Chapter 151B, §5. However, any claims under Chapter 151B must first be filed with the Mass. Commission Against Discrimination, which Ms. Winfield has failed to do.  She cannot, therefore, recover anything under Section 98.

actors sued in their official and individual capacities).  Based on the foregoing, plaintiffs' public

accommodation and Section 1981 claims should be dismissed in their entirety.

**V.      The Complaint Fails To State A Fourth And Fourteenth Amendment Claim Against
         The Andover Police Officers or Andover Fire & Rescue Personnel.**

In Counts V and VI, Mrs. Winfield alleges that her detention under Section 12 violated her

Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

Complaint ¶¶ 106-110.  Mr. Winfield contends that the Andover Police Officers actions constituted

a "de facto" arrest. *Id.,* ¶ 110.  For his part, in Counts VII and VIII, Mr. Winfield claims he was

arrested without probable cause and that his due process rights were violated when the arresting

officers failed to take him to the Lawrence District Courthouse (versus the Essex County Jail), in

violation of Mass. R. Crim. Proc. 7.[10]  The Town Officials understand that both Ms. Winfield's

civil commitment and Mr. Winfield's arrest, are viewed under the same probable cause standard.

*Ahern, supra,* 109 F. 3d at 815-16.  When there is probable cause for an arrest, the Fourth

Amendment's prohibition against unreasonable searches and seizures is not offended.  *Atwater v.*

*Lago Vista*, 532 U.S. 318, 354 (2001); *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F. 3d 249,

254 (1st Cir. 1996).  Probable cause for an arrest exists when the arresting officer, acting upon

apparently trustworthy information, reasonably concludes that a crime has been (or is about to be)

committed and that the putative arrestee likely is one of the perpetrators.  *See Beck v. Ohio*, 379

---

[10] Whatever may be said of Mr. Winfield's Section 1983 due process claim, it cannot be premised upon a violation of State law.  *Ahern v. O'Donnell,* 109 F. 3d 809, 815 (1st Cir. 1997) (per curiam) (specifically rejecting violation of M.G.L. c. 123, § 12, as a basis for asserting a Section 1983 claim); *Martinez v. Colon,* 54 F. 3d 980, 989 (1st Cir. 1995) (violation of state law, "standing alone," does not support a Section 1983 claim).  It should also be noted that Mr. Winfield was arrested, in part, on a domestic assault charge.  Under Massachusetts law, bail for an individual arrested on such a charge cannot be set for a minimum of six hours.  M.G.L. c. 276, § 57.

U.S. 89, 91 (1964).   Courts use an objective standard when determining the existence of probable

cause.   *Valente v. Wallace*, 332 F.3d 30, 32 (1st Cir. 2003);   *Roche*, 81 F.3d at 254.   The focus is

not on certitude, but, rather, on the likelihood of criminal activity.   *See Illinois v. Gates*, 462 U.S.

213, 235 (1983); and *Spinelli v. United States*, 393 U.S. 410, 419 (1969).   Finally, courts must

apply these principles fluidly to the totality of the extant circumstances.   *Gates*, 462 U.S. at 232 &

n. 7.   Based on these longstanding principles, the Town Officials submit that probable cause existed

to seek Ms. Winfield's commitment under Section 12 and Mr. Winfield's arrest, respectively.   The

Police Reports annexed to the Complaint bear this out.   Accordingly, Counts V-VIII should be

dismissed.

## VI.      Plaintiffs Have Failed to State a Conspiracy Claim Under Section 1985(3).

In Count IX, the Winfields allege that the individual Andover Police Officers and the

Andover Fire & Rescue personnel "worked in concert to violate the plaintiff's clearly established

rights under both the state and federal constitutions."   Complaint, ¶ 131.   According to Ms.

Winfield, the individual Police Officers/Fire & Rescue did so by "coordinating" their reports in

connection with the Richdale incident.   *Id.*, ¶ 132.   Of course, that there is some overlap in these

reports is not unusual and, standing alone, hardly supports a claim that the Andover Police/Fire &

Rescue conspired to deprive Ms. Winfield of her civil rights on account of her race.   *See, e.g.,*

*Gutierrez v. MBTA,* 437 Mass. 396, 415-416 (2002) (fact that one police officer copied a section

of his report verbatim from another officer's report found insufficient to establish an "agreement"

among the defendants to violate plaintiff's civil rights).   To succeed on a claim under Section

1985(3), a plaintiff must plead and prove that (1) the defendants conspired, (2) with the intent to

deprive her, directly or indirectly, of equal protection of the laws, (3) committed an act in

furtherance of the conspiracy, and (4) that plaintiff was deprived of exercising any right or

privilege of a citizen of the United States. *See Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005). "To prove the claim requires specific factual evidence of a 'meeting of the minds' among the conspirators." *Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86, 101 (D. Mass. 2009) (citations omitted). Here, Ms. Winfield has failed to allege that either Police Chief Keefe or Fire Chief Mansfield took any overt act in furtherance of a conspiracy to violate Ms. Winfield's rights. Nor does Ms. Winfield allege that they or any of the Police Officers and Fire and Rescue personnel reached a "meeting of the minds" to violate her civil rights. Finally, if any more need be said, all of the individual Police Officers and Fire & Rescue are employed by the Town of Andover. As U.S. District Court Judge Woodlock observed in a comparable setting, "[i]f the law were otherwise, every wrongful action by a commercial or municipal cooperation on which at least two employees conferred could give rise to conspiracy liability." *Wentworth Previous Metals, LLC v. City of Everett, at al.,* 2013 WL 441094 *14 (D. Mass.). Hence, under the intra-corporate doctrine, plaintiff cannot maintain a Section 1985(3) claim against these Andover Officials. *See, e.g., Broich v. Incorporated Village of Southampton*, 650 F. Supp. 2d 234, 246-47 (E.D.N.Y. 2009); *Felix v. Town of Randolph*, 2013 WL 3830840 *4 (D. Mass.). Accordingly, Court IX should be dismissed.[11]

---

[11] The Town Officials are aware that only last Term, the Supreme Court declined to approve or disapprove the intracorporate-conspiracy doctrine in the context of an alleged Section 1985(3) violation. *Ziglar v. Abassi,* 137 S. Ct. 184 (June 19, 2017). However, the Court went on to hold that since the courts are divided as to whether or not a Section 1985(3) conspiracy ". . . can arise from official discussions between or among agents of the same entity demonstrates that the law on this point is not well established." As a result, it would be "unfair" to subject officers to damages liability when even "judges disagree." *Id.*, citing *Wilson v. Layne* (citation omitted). *Id.,* at 1868. The same holds true here.

**VII.   Ms. Winfield Cannot Pursue A Section 1983 Based On Her Injury To Reputation.**

Brought under Section 1983 and the Massachusetts Declaration of Rights, respectively, Counts X and XI are premised upon Ms. Winfield's injury to her "image and reputation." Complaint, ¶ 138.  Ms. Winfield has not alleged any loss of income or any other tangible loss of benefits.  The Town Officials need not tarry: these claims are barred by and under the Supreme Court's decision in *Paul v. Davis*, 434 U.S. 693, 701 (1976); *see also Martin v. Cleveland Heights Police Dept.,* 2014 WL 272221 *3 (N.D. Ohio) (landlord's alleged threat to evict plaintiff, not attributable to police for purposes of demonstrating the "stigmatizing" effects of the defendant's actions).[12]

**VIII.   Ms. Winfield Has Failed To State A Supervisory Liability Claim Against Police Chief Keefe and Fire Chief Mansfield.**

As the Supreme Court observed fairly recently, a Section 1983 claim is "weakest" when based upon a negligent training claim.  *Connick* v. *Thompson,* 131 S. Ct. 1350, 1361-63 (2011).[13] Ms. Winfield maintains that "[t]he negligent hiring, training, supervision, and retention of personnel by the Defendants was the driving force behind the violations of the Plaintiff's well-established constitutional rights of which the Defendants were made aware . . ..".  A. C., ¶ 149. However, starting with Fire Chief Mansfield, the Complaint is utterly silent with respect to any prior incidents between Ms. Winfield and the Andover Fire Department which suggest the Fire

---

[12] The same results obtain with respect to Ms. Winfield's claim under the Massachusetts Declaration of Rights.  Even assuming *arguendo* that the Massachusetts Declaration of Rights, Art. 16, provides Ms. Winfield greater protection than the federal Constitution, she cannot pursue a Section 1983 claim based on a violation of the Massachusetts Declaration of Rights. *Strahan v. Frazier,* 156 F. Supp. 2d 80, 96 (D. Mass. 2001).

[13] The heading of Count XII contains the words "Gross Negligence."  To the extent Ms. Winfield is suggesting the Andover Police were grossly negligent, the Supreme Court has intimated that gross negligence is insufficient for purposes of establishing Section 1983 liability.  *See DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 194-195 (1989).

Department acted with deliberate indifference toward Ms. Winfield's constitutional or civil rights. Turning to Police Chief Keefe, Ms. Winfield refers to a meeting in November, 2013 in which Ms. Winfield explained her displeasure with two prior incidents which resulted in Ms. Winfield being involuntarily committed to assess her mental health pursuant to M.G.L. c. 123, §12.  Apparently, Ms. Winfield was dissatisfied with Chief Keefe's response in which he backed the Police Officers use of Section 12 on these two occasions.  *Id.*, ¶146.  However, Chief Keefe is not alleged to have participated directly in the Richdale incident.  Accordingly, to establish supervisory liability, Ms. Winfield must show "that the supervisor's conduct or inaction amounted to a callous or reckless indifference to the constitutional rights of others."  *Bowen v. City of Manchester*, 966 F.2d 13, 20 (1st Cir. 1992) (internal citation omitted).  "There must be an affirmative link between the street-level misconduct and the action, or inaction, of [the] supervisory official."  *Id.*; *see also, Pineda v. Toomey*, 533 F. 3d 50, 53-54 (1st Cir. 2008) ("A finding of deliberate indifference requires a showing that it would be obvious to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.").  Here, Ms. Winfield has not provided any details regarding training or supervision, nor made allegations that would tend to demonstrate an affirmative link between her supposed civil rights violation and Chief Keefe's alleged failure to train or supervise the Police Officers involved in the Richdale incident.  Moreover, the Section 12 Order was approved by the Police Department's Community Support Coordinator, who is specifically authorized to do so.  (Officer Namvar is a licensed Social Worker.)  Accordingly, Count XII should be dismissed.  *See Connick v. Thompon, supra,* 131 S.Ct. at 1363 ("Showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability").  *See also, Soto-Torres v. Fraticelli,* 654 F.3d 153, 157-60 & nn. 7 & 8 (1st Cir. 2011); and, *Phillipe v. Wallace*, 714 F. Supp. 2d 219, 222 (D. Mass. 2010).

IX.     **The Plaintiffs have failed to State A Monell Claim Against The Town.**

It is well settled that, "A municipality cannot be held liable *solely* because it employs a tortfeasor ...." *Monell v. Dept of Soc. Servs of the City of N Y*, 436 U. S. 658, 691 (1978).  Instead, a plaintiff must show that the violation occurred as a result of the municipality's "policy or custom." *Id.* at 694.  The mere incantation of the phrase "custom or policy" does not automatically crystallize such a claim.  *See, e.g., Bradley v. Village of Greenwood Lake*, 376 F. Supp.2d 528, 536-37 (S.D.N.Y 2005).  Ms. Winfield has not alleged sufficient facts to proceed on her Section 1983 claim against the Town of Andover.  For example, the Complaint lacks any facts which implicate the Town's policy-makers, namely the Town Manager or the Board of Selectmen.  Instead, the Winfields maintain that their civil rights "can be traced to the discriminatory practices of Town Officials and the atmosphere they created towards the plaintiffs on the basis of the plaintiffs' race, color, gender and national origin."  Comp., ¶ 152.  However, "atmospherics" are insufficient to state a *Monell* claim.  Plaintiffs have failed to (i) identify any custom or policy adopted by the Town of Andover and (2) affirmatively link that custom or policy to their alleged constitutional deprivations.  The Complaint is based on a single incident at the Richdale Convenience Store; the Complaint does not refer to any other similar incidents (other than the prior Section 12 incidents involving Ms. Winfield).  Accordingly, plaintiffs have failed to state a viable *Monell* claim and Count XIII should be dismissed.  *See, e.g., Freeman v. Town of Hudson,* 741 F. 3d 29, 38 (1st Cir. 2013) (plaintiff's *Monell* claim failed to state a claim where the Complaint "allege[d] misconduct from many separate actors, but gives no guidance about which acts are properly attributable to the municipal authority.").

**X.**   **Plaintiffs Have Failed To State A MCRA Claim.**

Ms. Winfield (Counts V & VI) and Robert Winfield (Counts VII & VIII), each assert their own claim under M.G.L. c. 12, §§11H and 11I ("MCRA").  The Town Officials will address them *seriatim*.  Ms. Winfield's claim stems from her being Section 12'd during the Richdale incident. To state a claim under the MCRA, a plaintiff must show that his (1) exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  *Farrah ex rel. Estate of Santana v. Gondella*, 725 F. Supp. 2d 238, 247 (D. Mass. 2010) (citing *Swanset Dev. Corp. v. City of Taunton*, 432 Mass. 390, 395 (1996)).  For purposes of the MCRA, "a '[t]hreat' ... involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm ....  'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct …. ['Coercion' involves] 'the application to another of such force, either physical or moral, as to constrain [a person] to do against his will something he would not otherwise have done.'"  *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474 (1994).  While most cases decided under the MCRA involve a factual element of physical confrontation or force, "in certain circumstances, economic coercion, standing alone, may be actionable under the act*."  Buster v. George W. Moore, Inc.*, 438 Mass. 635, 648 (2003).  MCRA liability arises (1) when the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do."  *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).

Although Ms. Winfield does allege that the Section 12 violated her Fourth and Fourteenth Amendment rights against unreasonable search and seizure, it does not make sense that the

Andover Police/Fire Rescue encouraged or requested the Section 12 to "coerce" her into giving up these rights.  Again, given that Ms. Winfield told Officer Dubois that her husband caused her bloody lip and Ms. Winfield's refusal to seek a domestic restraining order against him, the responding Police Officers were left in a very difficult situation.  Do nothing and allow Ms. Winfield to return to what may be a volatile domestic situation or, proactively, take some measure (justified by their own observations) to secure medical treatment for Ms. Winfield and at least temporarily separate her from Robert Winfield.

Turning to Mr. Winfield's MCRA claim, he contends that the responding Andover Police Officers arrested him without probable cause in violation of the Fourth Amendment.  Complaint, ¶¶ 116-126.[14]  Even if Ms. Winfield is to be believed, that is, she never told Officer DuBois that Robert Winfield hit her, there was still probable cause to arrest Mr. Winfield based on Mr. Winfield's rather disheveled appearance; his admission of drinking ("2 nips of Vodka"); taking some medication for anxiety (even if not "7 different medications"); and, his inability to complete several field sobriety tests, Officer DuBois certainly had probable cause to arrest Mr. Winfield for Operating Under the Influence.  Hence, the Andover Police Officers did not violate Mr. Winfield's Fourth Amendment rights.  In addition, the Complaint does not allege that Mr. Winfield's arrest was secured by threats, intimidation or coercion.  Accordingly, both Mr. and Mrs. Winfield's MCRA claims should be dismissed.

---

[14] The heading of Counts VII & VIII refers to the "Defendant police officers."   However, there is no indication that Police Chief Keefe was directly involved in or personally authorized Mr. Winfield's arrest at the Richdale Convenience Store.

XI.     **QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U. S. 551, 567 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U. S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").  The individual Town Officials submit that, even when viewed in a light favorable to the plaintiffs, the responding Police Officers and Fire and Rescue Personnel displayed nothing more than a "mere mistake in judgment."  As the First Circuit observed in a similar setting, "[sic], it is irrelevant whether the defendants acted in an ideal manner." *Ahern, supra,* 109 F. 3d at 818.  Accordingly, all of the claims against the individual defendants in their individual capacity, should be dismissed on the ground that they are qualifiedly immune from suit.

**CONCLUSION**

WHEREFORE, the Town of Andover and the individually-named Town Officials, respectfully submit that as against them, plaintiffs' Complaint should be dismissed in its entirety together with such other relief as this Court deems just and proper.

Respectfully submitted,
The Defendants,
TOWN OF ANDOVER, CHRISTOPHER HUGHES,
SOBAHN NAMVAR, STEVEN GERROIR, BARRY
DUBOIS, DERREK DERANIAN, PATRICK KEEFE,
ANDREW LOONIE, THOMAS KENNEDY III AND
MICHAEL MANSFIELD,
By their attorneys,
**PIERCE DAVIS & PERRITANO** LLP

*/s/ Adam Simms*
Adam Simms, BBO #632617
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109-4603
(617) 350-0950
asimms@piercedavis.com
jdavis@piercedavis.com

## CERTIFICATE OF SERVICE

I, Adam Simms, hereby certify that on this 26th day of July, 2017, I caused a true and
accurate copy of the above document to be served upon the *pro se* plaintiffs by delivering a copy
to the *pro se* plaintiffs via first-class mail as follows:

Marie Winfield
Robert Winfield
17 Redspring Road
Andover, MA 01810

*/s/ Adam Simms*
Adam Simms

- 21 -