UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                   )
MARIE WINFIELD and                 )
ROBERT WINFIELD,                   )
                                   )
          Plaintiffs,              )
                                   )
          v.                       )        CIVIL ACTION
                                   )        NO. 17-11051-WGY
TOWN OF ANDOVER, WENDY ADAMS,      )
CHAD COOPER, CHRISTOPHER HUGHES,   )
SOBAHN NAMVAR, STEVEN GERROIR,     )
BARRY DUBOIS, DERREK DERANIAN,     )
PATRICK KEEFE, ANDREW LOONIE,      )
THOMAS KENNEDY III, BRIAN          )
FLANAGAN, MICHAEL MANSFIELD, and   )
RICHDALE CONVENIENCE STORE,        )
                                   )
          Defendants.              )
_____)
```

MEMORANDUM AND ORDER


YOUNG, D.J.                                    April 4, 2018


**I.   INTRODUCTION AND PROCEDURAL HISTORY**

Pro se plaintiffs Marie Winfield ("Ms. Winfield") and

Robert Winfield ("Mr. Winfield") (collectively, the "Winfields")

bring a civil rights suit against the Town of Andover

("Andover"), the executive assistant to the Andover Town Manager

Wendy Adams ("Adams"), police officers Christopher Hughes

("Hughes"), Sobahn Namvar ("Namvar"), Steven Gerroir ("Gerroir"), Barry Dubois ("Dubois"), Derrek Deranian ("Deranian"), Chad Cooper ("Cooper"), and chief of police Patrick Keefe ("Keefe"); fire and rescue personnel Andrew Loonie ("Loonie"), Thomas Kennedy III ("Kennedy"), Brian Flanagan ("Flanagan"), and fire and rescue chief Michael Mansfield ("Mansfield") (collectively the "Town Officials" and with Andover, the "Andover Defendants"), and Richdale Convenience Store ("Richdale") for discriminatory treatment stemming from a number of incidents with the various defendants. Pls.' First Am. Compl. ("Am. Compl.") 1-5, ECF No. 16-1.

The Winfields initially filed their complaint on June 5, 2017. Compl., ECF No. 1. The Andover Defendants moved to dismiss the claims, Mot. Dismiss Pls.' Compl., ECF No. 7, and subsequently briefed the issues, Mem. Dismiss, ECF No. 8.

Upon hearing the motion to dismiss, the Court granted the motion. Order Mot. Dismiss Failure State Claim, ECF No. 13. Counts II, IV, X, and XI were dismissed with prejudice, and the other counts were dismissed without prejudice with leave for the Winfields to file a motion for leave to amend within 30 days. Id. The Winfields duly filed a motion for leave to file a proposed first amended complaint. Mot. Leave File First Am. Compl., ECF No. 16. The Andover Defendants opposed the motion, maintaining that the amended complaint failed to cure the

2

deficiencies of the original complaint and was therefore futile. Defs.' Opp'n, ECF No. 18.

After denying the Winfields' request for notice of default against Richdale due to the lack of evidence of service upon Richdale, see ECF No. 24, the Court then reissued a summons as to Richdale, Summons, ECF No. 25, and the summons returned executed, Summons Ret., ECF No. 26. The Winfields again requested notice of default, and the Court entered default against Richdale on March 23, 2018. See ECF No. 27; ECF No. 31.

## II. ANALYSIS

The Winfields' proposed first amended complaint includes twelve claims, most of which are asserted under 42 U.S.C. section 1983: retaliation in violation of the First Amendment against the police officer defendants and Adams (count I), Am. Compl. ¶¶ 92-106; discrimination in public accommodations against Richdale (count III), id. ¶¶ 107-20; unreasonable seizure, unreasonable detention, false arrest and imprisonment of Ms. Winfield against the police officer defendants and the fire and rescue personnel defendants (counts V and VI), id. at ¶¶ 121-37; unlawful arrest and false imprisonment of Mr. Winfield by the police officer defendants (counts VII and VIII), id. at ¶¶ 138-48; civil conspiracy in violation of the Civil Rights Act of 1964 by police officers and fire and rescue personnel (count IX), id. at ¶¶ 149-60; supervisory liability,

reckless or callous indifference, and gross negligence against
Keefe and Mansfield (count XII), id. at ¶¶ 161-73; a claim
alleging local government liability against Andover asserted
under Monell v. Department of Soc. Servs., 436 U.S. 658 (1978)
(count XIII), id. at ¶¶ 174-186; excessive use of force by Keefe
and Cooper under both section 1983 and the Massachusetts Civil
Right Act ("MCRA") (counts XIV and XV), id. at ¶¶ 187-201; and a
free standing MCRA claim[1] (count XIV), id. at 70-71.

The Andover Defendants contend that (i) the Winfelds'
motion for leave to amend was untimely because it was filed
after the expiration of the thirty day period set by this Court,
and (ii) because the proposed amended complaint "contains the
same deficiencies as Plaintiffs' original complaint . . . their
Motion for Leave to File an Amended Compliant should be denied
[as futile]." Defs.' Opp'n 2. They contest all but Count III,
which the Winfields asserted (and won default judgment) solely
against Richdale. See Am. Compl. ¶¶ 107-120; ECF No. 31.

A. **Standard of Review**

Leave to amend should be "freely give[n] . . . when justice
so requires." Fed. R. Civ. P. 15(a); see also Edlow v. RBW,
LLC, 688 F.3d 26, 39 (1st Cir. 2012). Courts, however, have
discretion to deny leave to amend under "appropriate

_____

[1] The Winfields do not specify against which defendants this
claim is asserted. Am. Compl. 70-71.

circumstances," such as "undue delay, bad faith, futility, and the absence of due diligence on the movant's part." <u>Palmer</u> v. <u>Champion Mortg.</u>, 465 F.3d 24, 30 (1st Cir. 2006).

The Winfields do not contest that they filed their motion for leave to amend more than thirty days after this Court's order, but they allege that their motion was delayed due to Ms. Winfield's injury by Keefe and Cooper's assault that resulted in hospitalization. Pls.' Reply ¶ 2, ECF No. 19. The Court, in its discretion, will not deny the motion to leave to amend due to this delay because the reason may be "valid" and the delay of approximately one month is not "considerable." <u>See</u> <u>Pérez</u> v. <u>Hospital Damas, Inc.</u>, 769 F.3d 800, 802 (1st Cir. 2014) (quoting <u>In re Lombardo</u>, 755 F.3d 1, 3 (1st Cir. 2014)).

The issue here is whether the Winfields' amended claims are futile. In assessing futility, courts apply the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>Adorno</u> v. <u>Crowley Towing & Transp. Co.</u>, 443 F.3d 122, 126 (1st Cir. 2006). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." <u>Abraham</u> v. <u>Woods Hole Oceanographic Inst.</u>, 553 F.3d 114, 117 (1st Cir. 2009) (quoting <u>Boston & Me. Corp.</u> v. <u>Hampton</u>, 987 F.2d 855, 868 (1st Cir. 1993)); <u>see</u> <u>Glassman</u> v. <u>Computervision Corp.</u>, 90 F.3d 617, 623

(1st Cir. 1996) ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.").

In order for the Winfields' proposed amended complaint to survive under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court is allowed to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011). The court's assessment of the pleadings is "'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Twombly, 550 U.S. at 556).

In reviewing documents for a motion to dismiss, "[o]rdinarily . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). There are exceptions, however, "for documents the authenticity

of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint," even if those documents are introduced by the defendant. Id.; see Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

## B. Count I: 42 U.S.C. § 1983 (Violation of the First Amendment)

In Count I, the Winfields assert a First Amendment retaliation claim in violation of 42 U.S.C. § 1983 against certain police officers and Adams. Am. Compl. ¶¶ 92-106. In particular, the Winfields allege that the "Andover Town Manager and the Chair of the Board of Selectmen have hindered [Ms. Winfield's] participation in the public Town meeting," and that a police officer seized Ms. Winfield to prevent her from participating in town meetings. Id. at ¶ 93. More specifically, Ms. Winfield alleges that on July 22, 2017, Adams, the executive assistant to the Andover Town Manager, without saying a word, called the police when Ms. Winfield went to her office to seek to be placed on the agenda for the next town meeting. Id. at ¶ 62. Then, three police officers arrived, told her that they wanted her to leave, and escorted her out of the public building. Id. Ms. Winfield alleges that this was the second time Adams called Andover police to remove her from the Town Hall just for seeking to speak with a town official.

Id. at ¶ 63.  These allegations bear a general resemblance to
Lozman v. City of Riviera Beach, 681 Fed. Appx. 746 (11th Cir.
2017), cert. granted, 138 S. Ct. 447 (2017), now under review by
the Supreme Court.  As the constitutional rights in this area
are thus not firmly established, the persons sued are entitled
to qualified immunity.

Under the qualified immunity doctrine, "government
officials performing discretionary functions generally are
shielded from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "When
a defendant invokes qualified immunity, an inquiring court
typically engages in a 'two-step pavane.'"  McKenney v. Mangino,
873 F.3d 75, 81 (1st Cir. 2017) (quoting Alfano v. Lynch, 847
F.3d 71, 75 (1st Cir. 2017)).  The court "must first determine
whether the plaintiff has alleged the deprivation of an actual
constitutional right at all, and if so, proceed to determine
whether that right was clearly established at the time of the
alleged violation."  Wilson v. Layne, 526 U.S. 603, 609 (1999)
(quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)).  "Unless
the plaintiff's allegations state a claim of violation of
clearly established law, a defendant pleading qualified immunity
is entitled to dismissal before the commencement of discovery."

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see Pearson v. Callahan, 555 U.S. 223, 223 (2009) (observing that because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is important to resolve immunity questions at the earliest possible stage in litigation (quoting Mitchell, 472 U.S. at 526)).

The Winfields also allege that after filing an internal complaint against the police officers, the police officers retaliated against them by "go[ing] to Plaintiffs' landlords and misrepresent[ing] material facts in order to cause the Plaintiff to lose her house through malice and coercion." Am. Compl. ¶ 94. Moreover, the Winfields allege that the fact the Winfields were arrested is due to the retaliation. Id.

To establish a First Amendment retaliation claim, a party must show that her conduct "was constitutionally protected, and that this conduct was 'a substantial factor [or] . . . a motivating factor' driving the allegedly retaliatory decision." Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2010) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 10 (1st Cir. 2005)); see also Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011); D.B. ex rel Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). "The defendant may then avoid a finding of liability by showing that 'it would have reached the same decision . . . even in the absence of the

protected conduct.'" <u>Esposito</u>, 675 F.3d at 43 (quoting <u>Powell</u>

v. <u>Alexander</u>, 391 F.3d 1, 17 (1st Cir. 2004)).

Here, even with the added facts regarding a complaint Ms.

Winfield made against two police officers, and the landlords'

eviction letter on October 12, 2017, the Winfields do not

sufficiently allege what adverse action was taken by the police

officers and whether police action was a "substantial factor or

a motivating factor" connected to the eviction letter. Am.

Compl. ¶¶ 18, 20. The Winfields allege only that "[b]ecause the

eviction violated M.G.L. 239 Section 2A and Chapter 186 Section

18 Retaliation Eviction, the Plaintiff was able to negotiate a

time to move outside the 30 day letter to vacate dated August 5,

2016, which inextricably linked Andover personnel with the

eviction letter." <u>Id.</u> at ¶ 94.

Therefore, under Rule 12(b)(6), even drawing all reasonable

inferences in the Winfields' favor, the Court rules that the

Winfields' First Amendment retaliation claim is futile. <u>See</u>

<u>Twombly</u>, 550 U.S. at 570.

## C. Counts V, VI, VII, and VIII: Unreasonable Seizure, Improper Detention, Unlawful Arrest, and False Imprisonment (Fourth and Fourteenth Amendment Claims)

In Counts V and VI, Ms. Winfield asserts a Fourth and

Fourteenth Amendment claim, alleging that police and fire and

rescue officers "abused their discretionary power," improperly

held her, and involuntarily committed her solely based on racial

animus and the stereotypical tag of mental illness.  Am. Compl.
¶¶ 121-37.  In Counts VII and VIII, Mr. Winfield alleges that he
was unreasonably seized and arrested by police officers.  Id. at
¶¶ 138-48.  The Town Officials argue that Counts V, VI, VII, and
VIII ought be dismissed because they had probable cause for both
of the challenged seizures.  Mem. Dismiss 12-13.

"If an officer has probable cause to believe that an
individual has committed even a very minor criminal offense in
his presence, he may, without violating the Fourth Amendment,
arrest the offender." Atwater v. City of Lago Vista, 532 U.S.
318, 354 (2001).  With regard to the issue of probable cause for
a warrantless arrest, "[t]he test is objective and turns on what
a reasonable police officer would conclude based on the evidence
actually available at the time (and not on unknown facts or
subsequent events)." Valente v. Wallace, 332 F.3d 30, 32 (1st
Cir. 2003); see Roche v. John Hancock Mut. Life Ins. Co., 81
F.3d 249, 254-55 (1st Cir. 1996).  The Supreme Court has held
that probable cause "is not a high bar: It requires only the
'kind of "fair probability" on which "reasonable and prudent
[people,] not legal technicians, act."'" Kaley v. United
States, 134 S. Ct. 1090, 1103 (2014) (quoting Florida v. Harris,
568 U.S. 237, 244 (2013)).

Here, the Court takes all the facts alleged by the
Winfields as true.  The Court does not assume that the content of

the police reports (where disputed) is true.  See Linden v. City
of Lansing, No. 1:13-CV-638, 2013 WL 6858459, at *3 (W.D. Mich.
Dec. 30, 2013) (holding that police reports were not public
records suitable for consideration on a motion to dismiss,
because the plaintiff "could reasonably question the accuracy of
the contents of the police reports").

### 1. Unlawful Restraint of Ms. Winfield

> In an emergency situation, if a physician, qualified
> psychologist, qualified psychiatric nurse mental
> health clinical specialist or licensed independent
> clinical social worker is not available, a police
> officer, who believes that failure to hospitalize a
> person would create a likelihood of serious harm by
> reason of mental illness may restrain such person and
> apply for the hospitalization of such person for a 3-
> day period at a public facility or a private facility
> authorized for such purpose by the department.

Mass. Gen. Laws ch. 123, § 12(a); see Munyiri v. Trinity EMS,
No. 11-11873-GAO, 2014 WL 6065881, at *2 (D. Mass. Nov. 13,
2014) (O'Toole, J.).

"It is now well-settled that the Fourth Amendment's
protections against unreasonable searches and seizures apply to
the involuntary hospitalization of persons for psychiatric
reasons."  Ahern v. O'Donnell, 109 F.3d 809, 815 (1st Cir.
1997).  Based on her allegations, Ms. Winfield was seized by the
police.  Am. Compl. ¶ 130; see Ahern, 109 F.3d at 816 ("[A]
person has been 'seized' within the meaning of the Fourth
Amendment only if, in view of all of the circumstances

12

surrounding the incident, a reasonable person would have believed that he was not free to leave." (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980))). The First Circuit has held that when police apply for involuntary hospitalization under section 12(a), "Fourth Amendment standards require a showing of probable cause; that is, circumstances warranting a reasonable belief that the person to be seized does (as outlined in the statute) have a mental health condition threatening serious harm to himself or others." Ahern, 109 F.3d at 817; see also Kunz v. Town of Northbridge, No. 14-13894-TSH, 2017 WL 3927616, at *4 (D. Mass. Mar. 13, 2017) (Hennessy, M.J.).

Ms. Winfield argues that the police incident reports she attached to her complaint are "comprised of barely veiled bigoted and racial stereotypes, which denounce the Defendants' true motive to perpetuate the myth they have sought to create of Plaintiff being the 'crazy Black woman of Andover.'" Am. Compl. ¶ 131. Even so, it is undisputed that Ms. Winfield was walking back and forth in the Richdale store, talking to people with her lip injured and needing stiches. Id. at ¶ 49.

Under the facts and circumstances known to the police officers at the time, a reasonable police officer would have believed that there was a probability Ms. Winfield would hurt

herself.[2]  As the Court has already observed, the probable cause standard is a "relatively low threshold."  Morrissey v. Town of Agawam, 883 F. Supp. 2d 300, 311 (D. Mass. 2012) (Neiman, M.J.) (quoting White v. Town of Marblehead, 989 F. Supp. 345, 349 (D. Mass. 1997)).  The basis for probable cause need not be "unquestionably accurate."  Roche, 81 F.3d at 255.  Moreover, it is undisputed that the police complied with the procedure required under section 12: a community supporter, Namvar, assisted the police and agreed to send Ms. Winfield to the hospital.  Am. Compl. ¶ 153; see Mass. Gen. Laws ch. 123, § 12.

Here, upon undisputed facts, the Court rules there was probable cause to justify the police and fire and rescue officers' civil commitment of Ms. Winfield.

## 2. Unlawful Arrest of Mr. Winfield

Mr. Winfield argues that he was unreasonably seized and arrested.  Am. Compl. ¶¶ 138-48.  The Andover Defendants argue probable cause is established in the police reports attached to the Winfields' complaint.  Mem. Dismiss 13.  According to the police reports, Mr. Winfield was arrested primarily for "Assault and Battery on Household Member" and "OUI Drugs."  Incident Report 1, ECF No. 1-9; Incident Report 2-4, ECF No. 1-10.

---

[2] The fact, if it is a fact, that Ms. Winfield was released from the hospital after six hours is irrelevant because the Court examines probable cause at the time of the incident and not afterwards.  See Valente, 332 F.3d at 32.

The Supreme Judicial Court of Massachusetts has held that probable cause for the offense of operating a vehicle under the influence of alcohol ("OUI") existed where an officer observed slurred speech, "red and glassy" eyes, and a strong odor of alcohol after properly stopping the defendant for speeding. See Commonwealth v. Blais, 428 Mass. 294 (1998).

Here, the police report indicates without dispute that Mr. Winfield exited his vehicle "holding his car keys," had a "distinct odor of an alcoholic beverage," and admitted he had consumed alcohol. Incident Report, ECF No. 1-9. Unlike in Blais, there is here no speeding or "red and glassy" eyes, but Mr. Winfield failed three field tests. Am. Compl. ¶¶ 55-56; Incident Report, ECF No. 1-9. These facts are enough to establish probable cause.[3]

Therefore, this Court rules probable cause existed for Mr. Winfield's arrest. Accordingly, the Court rules Counts V, VI, VII, and VIII are futile even as they are realleged.

---

[3] The Winfields do, however, take issue with many aspects of the police reports. Ms. Winfield disagrees with the basis of the domestic assault charge and denies that she told Officer Dubois her husband had hit her. Am. Compl. ¶ 37. Due to the OUI charge, the Winfields allege that Mr. Winfield never took "7 different medications for anxiety" which is stated in the police report. Id. at ¶ 57. Moreover, the Winfields doubt the field tests due to Mr. Winfield's "medical and mobility issues," and argue that Mr. Winfield's portable breath test is below the legal limit for legal intoxication. Id. ¶ 56.

**D.   Count IX: 42 U.S.C § 1983 Civil Conspiracy**

The Winfields assert a civil conspiracy claim under 42 U.S.C § 1983 against police officers and fire and rescue personnel, alleging that they "singularly and severally worked in concert to violate the Plaintiffs' clearly established rights," "acknowledge[d] in their separate reports that they coordinated with one another," and in some cases, "used exact or similar words or descriptions when referring to Plaintiff Marie Winfield, in particular."  Am. Compl. ¶¶ 149-60.  The police officers and fire and rescue personnel argue that the Winfields fail to set forth enough facts to establish a civil conspiracy claim.  Mem. Dismiss 13-14; Defs.' Opp'n 7.

In order to demonstrate a civil rights conspiracy under 42 U.S.C. § 1985(3), the Winfields must prove: "(1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States."  Barstad v. Murray County, 420 F.3d 880, 887 (8th Cir. 2005).  "To prove the claim requires specific factual evidence of a 'meeting of minds' among conspirators."  Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 104 (D. Mass. 2009) (Saylor, J.).

Here, the Winfields' allegation is based solely on the general cooperation between the police officers and fire and rescue personnel. It thus fails to show the requisite "meeting of minds" among the alleged conspirators. See Salcedo, 629 F. Supp. 2d at 104. The Winfields also fail to show "the intent to deprive" and "an act in furtherance of the conspiracy." See Barstad, 420 F.3d at 887. Thus, the Winfields fail to state a civil conspiracy claim.

**E.   Count XII: Supervisory Liability Under 42 U.S.C § 1983**

The Winfields allege a 42 U.S.C § 1983 supervisory liability claim for reckless or callous indifference and gross negligence against Keefe and Mansfield. Am. Compl. ¶¶ 161-73. In response, Keefe and Mansfield argue that the facts the Winfields allege do not meet the requirements necessary to establish a supervisory liability claim. Mem. Dismiss 15-16.

It is well established that supervisory liability "cannot rest solely on a defendant's position of authority." Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014); see Ocasio-Hernandez, 640 F.3d at 16. Rather, there are two elements to such a claim. First, the subordinate's behavior must have caused a constitutional violation, or abridged the plaintiff's constitutional rights. Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016); Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008). Second, the plaintiff must show that

there is "an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials," <u>Gutierrez-Rodriguez</u> v. <u>Cartagena</u>, 882 F.2d 553, 562 (1st Cir. 1989) (quoting <u>Woodley</u> v. <u>Town of Nantucket</u>, 645 F. Supp. 1365, 1372 (D. Mass. 1986)), such as "supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." <u>Guadalupe-Báez</u>, 819 F.3d at 515 (quoting <u>Pineda</u> v. <u>Toomey</u>, 533 F.3d 50, 54 (1st Cir. 2008)). "A plaintiff must show 'that the supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others.'" <u>Bowen</u> v. <u>City of Manchester</u>, 966 F.2d 13, 20 (1st Cir. 1992) (quoting <u>Gutierrez-Rodriguez</u>, 882 F.2d at 562)).

Here, the Winfields generally allege Keefe and Mansfield's roles as supervisors, but fail to provide sufficient facts showing the "constitutional violation" and the "affirmative link." <u>See</u> <u>Guadalupe-Báez</u>, 819 F.3d at 514-15. The facts that the Winfields allege, standing alone, do not establish a supervisory liability claim under section 1983.

**F.   Count XIII: <u>Monell</u> Claim**

The Winfields assert a <u>Monell</u> claim against the Town of Andover, alleging that Andover ought be liable for the Town Officials' violation of the Winfields' constitutional rights due to Andover's general policies.  Am. Compl. ¶¶ 174-86.

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. A municipality may be held liable "when execution of a government's policy or custom . . . inflicts the injury." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (quoting Monell, 436 U.S. at 694).

To establish a Monell claim, a plaintiff must show that a municipal "policy" or "custom" is the "moving force behind the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (quoting Monell, 436 U.S. at 694). A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Haley, 657 F.3d at 51 (quoting Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)).

Here, the Winfields' allegations regarding Andover's policy and custom are general and conclusory. Am. Compl. ¶¶ 174-86.

> [T]he Town (A) Failed to provide proper observation, training, support, and supervision; (B) Authorized the use of force in violation of constitutional rights; (C) Overlooked and permitted repeat violations of the First and Fourth Amendments; (D) Ignored the serious need for more adequate training, supervision, and recertification of its officers in regards to those violations; (E) Failed to discipline those persons whom are found to have engaged in the complained-of-conduct; (F) Failed to discharge officers who have shown a pattern or practice of engaging in similar types of unlawful conduct and constitutional violations; (J) Adopted a practice whereby officers who are unfit for peace officer duties are allowed to retain their positions; (H) Tolerated and encouraged

discriminatory policing on the basis of race, color, and national origin.

Id. ¶ 185.

The Winfields have not pled sufficient facts to support a Monell claim because they fail to identify a municipal policy or custom and also fail to show the causal link between the policy or custom and their injury.

**G.    Counts XIV and XV: Excessive Use of Force[4]**

Ms. Winfield asserts an excessive force claim against Keefe and Cooper by alleging that Keefe and Cooper injured her while she protested in the police office.  Am. Compl. ¶¶ 187-201. Keefe and Cooper argue that Ms. Winfield's excessive force claim is futile because Ms. Winfield's allegations are "insufficiently detailed," "compel[ling] dismissal under the Rule 12(b)(6)

---

[4] The Winfields alleged excessive force under the First, Fourth, Fifth, and Fourteenth Amendments.  Am. Compl. ¶¶ 187-201.  The Winfields fail to state a First Amendment claim, as discussed supra.  See Gorelik v. Costin, 605 F.3d 118, 119 (1st Cir. 2010).  The Fifth Amendment is inapplicable to the defendants because the Due Process Clause of the Fifth Amendment "applies only to actions of the federal government -- not to those of state or local governments." Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001)). Regarding the Fourteenth Amendment claim, the Supreme Court established an "objective reasonableness" standard under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 388 (1989); see Estate of Bennett v. Wainwright, 548 F.3d 155, 163 (1st Cir. 2008) (holding that because the protections of the Fourth Amendment apply to the excessive force claim, the alternate substantive due process claim "cannot advance").  Thus, the Court addresses only the excessive use of force claim under the Fourth Amendment.

pleading standard," and due to the "objective reasonableness" shown by the police incident reports. Defs.' Opp'n 8-9 (citing Graham, 490 U.S. at 388).

The Supreme Court has held that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Graham, 490 U.S. at 388; see Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (explaining that courts analyze "excessive force claims according to the constitutional touchstone of objective reasonableness, so [they] do not consider an officer's subjective 'intent or motivation'"); County of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017) ("'[R]easonableness is always the touchstone of Fourth Amendment analysis,' and reasonableness is generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" (first quoting Birchfield v. North Dakota, 136 S. Ct. 2160, 2186 (2016), then quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985))).

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant

officer employed force that was unreasonable under the circumstances." McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014) (quoting Kenney v. Floyd, 700 F.3d 604, 609 (1st Cir. 2012)). This reasonableness inquiry is an objective one; it is not a question of subjective intent. Graham, 490 U.S. at 397 ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

Ms. Winfield alleges that on October 5, 2017, she walked into the "public safety" building to express her concern regarding a suspicious guest. Am. Compl. ¶¶ 74-76. Reacting to the lack of politeness of the police officer at the desk, she commenced a sit-in protest inside the building. Id. Chief of Police Keefe came and told her that he could meet with her the following Wednesday. Id. at ¶ 77. Ms. Winfield refused to leave the lobby. Id. at ¶¶ 74-94. Later, Keefe hit Ms. Winfield on her right arm. Id. at ¶ 78. Ms. Winfield heard that Keefe said she hit him. Id.

When Keefe got close to Ms. Winfield, she put her hands up and felt her forearm was "hurting a little bit where [Keefe] hit her." Id. Then, Keefe and Cooper "grabbed" her, "twisted and jerked" her body around, and "dragged and pushed" her about 60 to 70 feet outside the building to the passenger's side of her

car.  Id.  Due to the assault, Ms. Winfield went to the hospital

seeking multiple tests and imaging.  Id. at ¶ 79.  Ms. Winfield

alleges she suffered severe pain, is unable to sit or lie down,

and can barely walk.  Id.  She claims she also suffered pain in

her hips, back, legs, and feet.  Id.

Keefe and Cooper argue that the Court ought consider the

incident report in connection with the Winfields' claim without

converting the Plaintiffs' motion to one for summary judgment.

Defs.' Opp'n 8-9 (citing Watterson v. Page, 987 F.2d 1, 3 (1st

Cir. 1993); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015

(1st Cir. 1988)).  "[W]hen [a] plaintiff fails to introduce a

pertinent document as part of his pleading, [a] defendant may

introduce the exhibit as part of his motion attacking the

pleading."  Fudge, 840 F.2d at 1015 (quoting C. Wright & A.

Miller, Federal Practice and Procedure, § 1327 at 489 (1969)).

Here, Ms. Winfield does not refer to, but generally disputes,

the incident report.  Am. Compl. ¶¶ 187-200.  This Court is

cautious in relying on the incident report.  See Linden, 2013 WL

6858459 at *8; see also Dan M. Kahan, David A. Hoffman & Donald

Braman, Whose Eyes Are You Going to Believe? Scott v. Harris and

the Perils of Cognitive Illiberalism, 122 Harv. L. Rev. 837

(2009).[5]

---

[5] More recently, while communicating on another topic, my
colleague Hon. Lawrence Stengel, Chief Judge of the Eastern

Unless this Court is going to engage in forbidden balancing as between these two versions, it is pellucidly clear that Ms. Winfield's allegations adequately state a claim for the exercise of excessive force under color of law.  Compare Kisela v. Hughes, No. 17-467, 2018 U.S. LEXIS 2066 (U.S. Apr. 2, 2018). The cognate action under the Massachusetts Civil Rights Act also survives, since the alleged excessive force itself supplies the "coercion" required by the Massachusetts law.

### H.   The Massachusetts Civil Rights Act ("MCRA") Claims in Counts V, VI, VII VIII, XIV and XV

The Town Officials contend that the Winfields' pleadings "do[] not meet even a bare minimum standard of required factual detail, and provides no notice to the named Town Officials as to the specific allegations associated with the [MCRA] claim." Defs.' Opp'n 9.

The MCRA provides that any person who interferes, or attempts to interfere, with another's exercise or enjoyment of rights secured by the constitution or laws of the United States

District of Pennsylvania, coined the phrase "over academizing" the litigation process, i.e. so parsing the element of a case that judicial rulings become disguised fact-finding under the rubric that no "reasonable" jury could disagree.  Email from Hon. Lawrence Stengel, United States District Court for the Eastern District of Pennsylvania, to Hon. William G. Young, United States District Court for the District of Massachusetts (Dec. 20, 2017)(on file with author).  Chief Judge Stengel is manifestly correct and his insight is compelling.

This present opinion seeks to walk this somewhat obscure path to separate the potential wheat from the chaff.

or the Commonwealth may be liable.  Mass. Gen. Laws ch. 12, §

11I.  Unlike a section 1983 claim, to establish a claim under

the MCRA, the plaintiff must show the "interference with the

plaintiff's civil rights by threats, intimidation, or coercion."

See Matthews v. Rakiey, 38 Mass. App. Ct. 490, 492 n.5 (1995).

Such threats, intimidation, or coercion comprises "the

'essential element' of an MCRA violation."  Chaabouni v. City of

Boston, 133 F. Supp. 2d 93, 100 (D. Mass. 2001) (quoting Layne

v. Superintendent, 406 Mass. 156, 158 (1989)).

Here, as discussed above, save for this excessive force

claim which may proceed, the failure of the federal claims doom

their Massachusetts counterparts as well.

## III. CONCLUSION

For these reasons, Ms. Winfield may proceed with her claim for excessive force against Keefe and Cooper.  In all other respects, the motion for leave to file an amended complaint is denied as futile and the case is dismissed upon the remaining claims against the remaining defendants,[6] with the exception of Richdale.

**SO ORDERED.**

                                   /s/ William G. Young
                                   WILLIAM G. YOUNG
                                   DISTRICT JUDGE

---

[6] Perhaps it will be noted that this decision is in no way grounded on considerations of "plausibility."  It is, rather, based on the undisputed factual allegations before the court. In fact, most of the Winfields' conclusory statements -- although unsupported by competent factual allegations -- are at least "plausible."  Indeed, the plausibility standard continues to be remarkably ill defined and this Court considers it a poor guide to determining motions to dismiss.  Perhaps the best exposition of the term is found in the decision of the Honorable Mark Kearney in Roxul USA, Inc. v. Armstrong World Indus., Inc., No. 17-1258, 2018 WL 810143 at *2 n.20 (D. Del. Feb. 9, 2018) (citing Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016)).

As far back as 2010, the dean of civil procedure scholars, Professor Arthur Miller, predicted exactly what has happened here -- a heightened focus on fact pleading and the indeterminacy of the plausibility standard.  See From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 42-43 (2010).