UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                           )
MARIE WINFIELD,            )
                Plaintiff, )
                           )
        v.                 )        CIVIL ACTION
                           )        NO. 17-11051-WGY
PATRICK KEEFE, and         )
CHAD COOPER,               )
                           )
                Defendants.)
_____)
```

YOUNG, D.J.                                      February 20, 2019

## MEMORANDUM AND ORDER

"Qualified immunity attaches when an official's conduct
does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known." City of
Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019) (quoting
Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018) (per curiam));
Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017). "The
doctrine's prophylactic sweep is broad: it leaves unprotected
only those officials who, 'from an objective standpoint, should
have known that their conduct was unlawful.'" Alfano, 847 F.3d
at 75 (quoting MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st
Cir. 2014) (quoting Haley v. City of Bos., 657 F.3d 39, 47 (1st
Cir. 2011)). "Put another way, the doctrine protects 'all but
the plainly incompetent or those who knowingly violate the

law.'" Alfano, 847 F.3d at 75 (quoting Malley v. Briggs, 475
U.S. 335, 341(1986)).

"The qualified immunity analysis entails a two-step
pavane." Alfano, 847 F.3d at 75. "The first step requires an
inquiring court to determine whether the plaintiff's version of
the facts makes out a violation of a protected right." Id. "The
second step requires the court to determine 'whether the right
at issue was 'clearly established' at the time of defendant's
alleged misconduct.'" Id. (quoting Pearson v. Callahan, 555 U.S.
223, 232 (2009). "These steps, though framed sequentially, need
not be taken in order." Id. "The 'clearly established' analysis
has two sub-parts." Id. "The first sub-part requires the
plaintiff to identify either 'controlling authority' or a
'consensus of cases of persuasive authority' sufficient to send
a clear signal to a reasonable official that certain conduct
falls short of the constitutional norm." Id. (quoting Wilson v.
Layne, 526 U.S. 603, 617 (1999)).

"The first sub-part of this analysis 'must be undertaken in
light of the specific context of the case, not as a broad
general proposition.'" Alfano, 847 F.3d at 76 (citing Brosseau
v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583
(2004) (per curiam)). The Supreme Court, in City of Escondido,
Cal. v. Emmons, 139 S. Ct. 500, 503 (2019), recently emphasized
the heightened level of specificity required:

"This Court has repeatedly told courts ...
not to define clearly established law at a
high level of generality." Kisela, 584 U.S.,
at ----, 138 S.Ct., at 1152 (internal
quotation marks omitted). That is
particularly important in excessive force
cases, as we have explained:
"Specificity is especially important in the
Fourth Amendment context, where the Court
has recognized that it is sometimes
difficult for an officer to determine how
the relevant legal doctrine, here excessive
force, will apply to the factual situation
the officer confronts. Use of excessive
force is an area of the law in which the
result depends very much on the facts of
each case, and thus police officers are
entitled to qualified immunity unless
existing precedent squarely governs the
specific facts at issue....
"[I]t does not suffice for a court simply to
state that an officer may not use
unreasonable and excessive force, deny
qualified immunity, and then remit the case
for a trial on the question of
reasonableness. An officer cannot be said to
have violated a clearly established right
unless the right's contours were
sufficiently definite that any reasonable
official in the defendant's shoes would have
understood that he was violating it."
Kisela, 584 U.S., at ----, 138 S.Ct., at
1152 (internal quotation marks omitted).

City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019)

(emphasis added).

"The second sub-part asks whether an objectively reasonable

official in the defendant's position would have known that his

conduct violated that rule of law." Alfano v. Lynch, 847 F.3d

71, 75 (1st Cir. 2017) (citing Wilson v. City of Bos., 421 F.3d

45, 57-58 (1st Cir. 2005)). "The question is not whether the

official actually abridged the plaintiff's constitutional rights but, rather, whether the official's conduct was unreasonable, given the state of the law when he acted." Id. at 75-6 (citing Amsden v. Moran, 904 F.2d 748, 751-52 (1st Cir. 1990)).

Here, Marie Winfield ("Winfield") and her husband Robert originally commenced a multi-count complaint against a number of Andover police officers. Only Winfield's claim that Andover Police Chief Patrick Keefe ("Keefe") and Andover Police Lieutenant Chad Cooper ("Cooper") used excessive force when escorting her from the police station survived the motion to dismiss Winfield v. Town of Andover, 305 F. Supp. 3d 286, 300 (D. Mass. 2018).

Now Keefe and Cooper, armed with affidavits and a video recording of the encounter at the police station, move for summary judgment on the remaining counts. The video may be divided into two segments[1] - a lengthy bright depiction of the encounter from multiple security cameras within the police station and a shorter, much darker and blurry segment from a

---

[1] The use of the word "segment" here in no way derogates from this Court's duty to "examine the actions of the government officials leading up to the seizure" ("the broad view"). St. Hilare v. City of Laconia, 71 F. 3d 20, 26 (1st Cir. 1995). See Young v. City of Providence ex rel Napolitano, 404 F. 3d 4, 22 (1st Cir. 2005). Cf Plakas v. Drinski, 19 F. 3d 1143, 1150 (7th Cir. 1994); Dickerson v. McClellan, 101 F. 3d 1151, 1161 (6th Cir. 1996) ("the segmented approach"). See Hon. Jack Zouhary, A Jedi Approach to Excessive Force Claims: May the Reasonable Force Be With You, 50 U. Toledo L. Rev. 1 (2018).

single more distant security camera outside. Winfield and her husband counter with affidavits of their own.

"[W]hether an objectively reasonable official in the defendant's position would have known that his conduct violated [a clearly established constitutional right]," Alfano, 847 F. 3d at 75, is a mixed question of fact and law. It is the Court that establishes the legal standard defining the "objectively reasonable official." Here, in light of the irrefutable evidence provided by the video inside the police station, this Court has no hesitancy in ruling as matter of law that no reasonable police officer would have understood their conduct to have violated constitutional norms.

The blurry video outside the police station presents a different situation. One cannot tell specifically what is going on, and Robert Winfield's affidavit alleges that Keefe and Cooper pushed Marie Winfield "using as much force as possible" and "pushed [her] as hard as they could." Robert Winfield Aff'd ¶¶ 21-22.

True, there are various non-material inconsistencies in the Winfields' affidavits and parts of them are nonsense in non-material ways in light of what accurately can be discerned from the video. Moreover, it would have been utterly out of character and counter productive for Keefe and Cooper to have spent hours entreating, cajoling, and gently guiding Winfield

out of the police station to then, having achieved their goal, roughly to have shoved her into the family car. Yet none of these observations makes a whit of difference.

This is a jury case, triable as of right to a duly qualified jury under the Seventh Amendment. It is the jury's conclusions, not mine, that matter. See generally Dan M. Kahan, David A. Hoffman & Donald Braman, Whose Eyes Are You Going to Believe? Scott v. Harris and the Perils of Cognitive Illiberalism, 122 Harv. L. Rev. 837 (2009).

While it would be facile to rule that no reasonable jury could find for Marie Winfield, it would be wrong.

The summary judgment standard bears repeating here: this Court may not act as a trier of fact, but rather must "draw all reasonable inferences in favor of the nonmoving party, and . . . not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, (2000) (citations omitted). Thus, all inferences must be drawn in the light most favorable to Winfield, as opposed to the video itself as urged by defendants, because the video capturing the events outside the lobby is ambiguous. See Freedman v. Ali, No. 16-CV-11151-DJC, 2018 WL 5982018, at *4 (D. Mass. Nov. 14, 2018) (Casper, J.) (citing Morris v. Leblanc, 674 F. App'x 374, 378 n.6 (5th Cir. 2016). Winfield has put forth enough evidence, as

the non-moving party, to establish a genuine issue of material fact that needs resolution by a jury at trial.

For purposes of the qualified immunity analysis at summary judgment, the issue is properly defined as: whether Winfield has the right to be free of the defendants' use of force by their pushing Winfield with as much force as possible and as hard as they could to her car, causing her injury, after two and one-half hours of cajoling her to leave the police station building, and her refusing to leave after being ordered to leave by police.

Winfield points to no First Circuit authority directly supporting such a "clearly established" right. Nevertheless, viewing the facts in the light most favorable to Winfield, as this Court must, her claim comes within the ambit of First Circuit jurisprudence. See, e.g., Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009) (summary judgment on excessive force claim reversed where officer grabbed plaintiff by wrist, slammed her against a wall and held her there for three minutes, resulting in torn rotator cuff); Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341, 353 (1st Cir. 1995) (summary judgment on excessive force claim reversed where non-resisting plaintiff dragged over a table, handcuffed, and carried through a restaurant resulting in bruising).

While "not every push or shove rises to the level of a constitutional violation," Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 205 (1st Cir. 1990), were the Winfields to be believed, reasonable officers in the defendants' positions should have understood that their actions infringed her rights by pushing her "using as much force as possible" and "as hard as they could" and causing injury. Robert Winfield Aff. ¶¶ 21-22.

Accordingly, the Court DENIES qualified immunity and summary judgment on so much of Winfield's federal and state claims for excessive force as pertains solely to events once she left the police station through her being driven away in the family car. In all other respects summary judgment is ALLOWED for the defendants on the ground of qualified immunity.

**SO ORDERED.**

_William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE